UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO: 5:06-CV-158

DONALD BUCHANAN                                                                    PLAINTIFF

v.

USEC INC.,
UNITED STATES ENRICHMENT CORPORATION,
BRENDA A. PROPER, AND
THE RETIREMENT PROGRAM PLAN FOR
EMPLOYEES OF THE UNITED STATES
ENRICHMENT CORPORATION                                                   DEFENDANTS


## MEMORANDUM OPINION


Plaintiff filed a Motion for Summary Judgment.  (Docket # 11). Defendants filed a Brief in Support of the Entry of Judgment Affirming the Plan Administrator's Decision.  (Docket # 12).  Plaintiff responded to Defendants' Brief (Docket # 15), and Defendants responded to Plaintiff's Motion for Summary Judgment (Docket # 16).  The matter is now ripe for adjudication.  The Court now GRANTS Defendants Motion for Judgment Affirming the Plan Administrator's Decision and DENIES Plaintiff's Motion for Summary Judgment.


## BACKGROUND


Plaintiff was employed by the Nuclear Safety and Quality ("NS&Q") division at Defendant USEC, Inc., ("USEC") for thirty years, three months, and fourteen days before his retirement in 2003.  USEC provides a retirement plan for its employees which is governed by

ERISA.   Plaintiff applied for an Early Full Bridged Retirement in on July 14, 2003, and retired August 1 of the same year.  Plaintiff now takes issue with the calculation of his pension benefits in light of a change to his work schedule shortly before retirement.  Defendant Brenda A. Proper is the retirement program Benefits Plans Administrator, and Defendant Retirement Program Plan for Employees of the United States Enrichment Corporation is the entity from which Plaintiff collects his pension.

From February 4, 2003, to June 25, 2003, there was a strike at USEC and many workers, such as Plaintiff, were enlisted to work additional hours to keep the plant running.  In many departments, managers uniformly increased the hours in the schedules of employees.  In most of those departments, management announced that salaried employees working on the extended schedules would have their lump sum pensions recalculated with the increase hours as the basis for the pension, increasing their retirement benefits.

Jorge Labarraque ("Labarraque"), Plaintiff's supervisor was required to increase the hours worked by Plaintiff and other NS&Q employees within his division.  Unlike other divisions, NS&Q did not immediately and uniformly adopt a permanent extended hours plan and increase the pensions of its employees.  At first, it appears that Labarraque did institute a sixty hour work week to be followed by all employees during the strike.  During this time, Plaintiff contends he was required to work twelve hour days, five days a week.  His schedule was to work from 7:00 A.M. until 7:00 P.M. with a thirty minute lunch.  Previously, Plaintiff worked from 7:00 A.M. until 3:30 P.M. with an unpaid lunch.  Plaintiff claims that Labarraque indicated that this new schedule, worked during the strike, would be applied to increase employees' retirement plans.

However, because a NS&Q employee was required to be present at all times and because

2

some employees expressed difficulty complying with the sixty hour work week, Labarraque decided to switch to a more flexible schedule.  On the new schedule, some employees could adhere to a strict sixty hour work week.  Others were permitted to pick up additional shifts and hours for additional pay.  A new schedule was put out weekly, varying each employees hours and schedule based on need.  This weekly flexible schedule was a departure from the strict sixty hour work week initially imposed by Labarraque.  Employees were, however, required to work some additional hours during the strike.

Plaintiff argues that the sixty hour work week remained mandatory and did not vary throughout the pendency of the strike.  However, a summary of the hours worked by Plaintiff during the strike show that he did not regularly work five twelve hour days a week.  On some weeks, Plaintiff exceeded the sixty hours worked in a week and often worked more than five days a week.  During other weeks, Plaintiff worked some eight hour days and worked fewer than sixty hours in a week.  It is clear that Plaintiff did not work a regular schedule of sixty hours a week, with five twelve hour days.  On only seven of twelve weeks during the strike did Plaintiff appear to adhere to a schedule of five twelve hour work days a week.  During none of those seven weeks did Plaintiff work exactly sixty hours, sometimes taking overtime and sometimes taking days off.  During the other weeks of the strike, Plaintiff worked at least one eight hour day during the week, often substituting several twelve hour days for an eight hour day.  At most, Plaintiff worked fifty-six days consecutively in keeping with his proposed sixty hour work week.  Even nonconsecutively, Plaintiff worked at least twelve hours only seventy-two days during the

3

strike according to his reported hours.[1]  Out of twenty-one weeks of strike, Plaintiff exceeded sixty hours in a week for only eleven.

Upon his retirement, Plaintiff applied for additional pension payments based on the increased work week instituted during the strike.  He was originally informed in a Memorandum from Bill Thompson, Director of Human Resources for USEC, on June 13, 2003, that he was eligible for increased pension benefits based on his increased hours.  Three days later, Mr. Thompson again wrote to Plaintiff to inform him that the original Memorandum was in error and that Plaintiff's working hour schedule did not meet the requirements to increase his pension. Subsequently, Labarraque wrote to the Gwen Blanton, who was involved in the consideration of Plaintiff's pension, to explain the hours worked in the NS&Q department during the strike. According to Labarraque, a twelve hour shift was added to the schedule.  However, it was applied flexibly, varying from week to week based on need and availability of employees.  When an employee was scheduled for a twelve hour shift, it was a mandatory condition of employment. Labarraque submitted Plaintiff's name as one meeting the criteria for an increased pension plan.

Plaintiff requested additional explanation regarding his pension.  It is apparent from internal memoranda that the Defendants and their agents carefully considered Plaintiff's claims. Gwen Blanton, USEC's Compensation Manager, indicated that she reviewed Plaintiff's materials, but that following Labarraque's recommendation to increase Plaintiff's pension would indeed be a deviation from the standards set forth for retirement benefits.  She stated that retrofitting schedules to make employees eligible for the increased benefits "would be very

---

[1]Plaintiff claims he worked one hundred and forty days at his extended hours schedule. However, this is not evident from the accounting of his hours during the strike.

4

difficult to flush out fairly and equitably without creating concerns of managerial ethics and integrity." Plaintiff received a Memorandum from Stephen Russo, the Director for Human Resources and Labor Relations, on October 20, 2003, that his pension was correctly calculated and that he was not eligible for an increased pension under the retirement plan standards. Plaintiff also received a letter from Barbara Burrage, the Paducah Human Resources Generalist, on October 31, 2003, indicating that an additional review of his pension had been conducted and that the pension had been correctly calculated under USEC retirement plan standards.

Approximately two years later, Plaintiff sought again to clarify why his pension was not calculated on an increased hour schedule. On December 9, 2005, Plaintiff received confirmation from Hal Anderson, a Central Benefits Manager for USEC, that the Committee had correctly determined his pension under USEC standards and articulating the criteria used by USEC in determining eligibility for a pension increase. Plaintiff claims that he requested a formal appeal of his benefits on January 25, 2006, January 26, 2006, February 21, 2006, and April 4, 2006. While the Defendants claim that the January requests for appeals were not received and that a timely request was not filed, a review from appeal was conducted. On June 15, 2006, W. Lance Wright responded to Plaintiff that the company found no reason to revise the original pension.

The USEC Employee Benefits Administrative Committee issued a determination regarding Plaintiff's appeal on May 25, 2006. The Committee held that, though Plaintiff's hours were increased, the additional hours worked did not qualify as pensionable earnings. The additional hours were determined not to be part of an 'established regular work schedule' and were instead mandatory overtime hours assigned on an as-needed basis. Because the sixty hour work week was not mandatory and was not adhered to by Plaintiff for at least ninety consecutive

days during the strike, the Committee found that Plaintiff's schedule had not been sufficiently altered to affect his pension rights.

Plaintiff claims that, of employees in his division on an extended schedule, he was the only one ineligible to receive increased benefits. Of thirty salaried employees retiring around when Plaintiff retired, Plaintiff claims he was the only one not granted the additional pension. However, Defendants name numerous employees who worked increased hours during the strike but were not awarded additional benefits upon retirement, though they retired near Plaintiff's retirement date. Furthermore, Defendants contend that Plaintiff has not supported these assertions that he was alone in being denied pension benefits in the record, and claims that any additional evidence which was not before the Committee at the time of Plaintiff's review of benefits is irrelevant.

The parties agree the standards applicable to Plaintiff's retirement funds are as follows. Criteria to be addressed in determining whether an employees schedule meets the "scheduled hours" definition in the Human Resources Policy are:

(1)     Whether the actual schedule is a deviation from the standard schedule;

(2)     Whether the schedule must be the regular fixed schedule that an employee is required to work;

(3)     That the schedule is a condition of employment; that it is mandatory;

(4)     Whether the schedule is ongoing (permanent) or sporadic (equal to or greater than ninety days continuous); and

(5)     Whether overtime (including casual or mandatory overtime) does not qualify.

In the company's Human Resources Administration Policy, "Scheduled Hours" are

defined as follows:

> The regular fixed schedule that an employee is required to work.  The schedule is a condition of employment; it is mandatory.  Overtime (including casual and mandatory overtime) does not qualify.  The schedule must be ongoing (permanent) or sporadic (equal to or greater than 90 days continuous) and properly approved by the USEC Compensation manger or designated represtntative.

The Human Resources Administration Policy also defines "Standard Scheduled Hours"

as :

> The standard schedule for all Salary Exempt and NonExempt employees is 80 hours.  The standard schedule for all PACE employees is 40 hours.  The standard schedule for all Portsmouth (PORTS) SPFPA employees is 42.5 hours and Paducah (PGDP) Security Inspector SPFPS employees is 45.5. hours.  The standard schedule for all part-time employees is 40 hours.

"Extended Scheduled Hours" is further defined as:

> This occurs when approval has been granted to deviate from the standard schedule and grant additional time whether paid or unpaid hours to the standard schedule.
> Some examples are (not inclusive):
> SPFPA guards who are required to qualify to certain physical standards and who demonstrate weapons qualifications.
> Salary Supervisors of guards who are required to meet the same qualifications standards as the guards.
> First line managers who are required to do shift turnover.

Retirement benefits are determined by a formula based upon the employee's

Compensation and years of Credited Service.  Compensation is defined as "the straight-time

portion of compensation" a participant receives during his or her "established regular working

schedule."  "The determination of the Committee as to what constitutes Compensation... shall be

conclusive" under the Plan.  However, the Plan shall be administered "in a uniform and

nondiscriminatory manner and in fill accordance with any and all laws applicable to the Plan."

7

Plaintiff filed this suit claiming that the Defendants arbitrarily and erroneously applied the retirement standards to the hours he worked.  He claims that his schedule did meet the "scheduled hours" definition, while Defendants contend that the schedule was not sufficient permanent to qualify as "scheduled hours" and alter the pension plan.  Defendants responded to the present Motion for Summary Judgment with a Motion for Judgment Affirming the Plan Administrator's Decision because they contend that Summary Judgment is inappropriate in ERISA matters.

<strong>STANDARD</strong>

**1.      Summary Judgment**

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact."  *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case."  *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)).  "The plaintiff must present more than a mere scintilla of evidence in support of her

position; the plaintiff must present 'evidence on which the jury could reasonably find for the plaintiff.'" *Id.* (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment.  "The mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996) (citing *Anderson*, 477 U.S. at 247-49).

In this matter, Defendants contend that summary judgment is an inappropriate vehicle for review of a challenge to benefit determinations under an ERISA plan. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618-20 (6th Cir. 1998).  The Court should instead base its review solely upon the evidence before the plan administrator at the time of its decision. *Id.*; *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966-67 (6th Cir. 1990).  Because the Court will only rely on the information in the record, there is no issue of fact in this matter.  Therefore, review will proceed in a similar manner to summary judgment.

## 2.    ERISA Standard

"[A] denial of benefits challenged under 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  "When such authority is granted, the highly deferential arbitrary and capricious standard of review is appropriate." *Borda v. Hardy, Lewis, Pollard, & Page, P.C.*, 128 F.3d 1062, 1066 (6th Cir. 1998).  A plan administrators decision will not be

deemed arbitrary and capricious so long as "it is possible to offer a reasoned explanation based on the evidence, for a particular outcome." *Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989).

"[T]he arbitrary and capricious standard is the least demanding form of judicial review." *Id.* The Court need only determine whether the decisions were "rational in light of the plan's provisions." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). Although the standard is deferential, "[d]eferential review is not no review and deference need not be abject." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). *See also Jones v. Metro. Life Ins. Co.*, 383 F.3d 654, 661 (6th Cir. 2004).

## ANALYSIS

### I.      ERISA Standard of Review

Defendants contend that the Court must use an "arbitrary and capricious" standard to review the Committee's opinion because the Administrator has "discretionary authority." *Firestone*, 489 U.S. at 115. Under the USEC Plan of benefits, the Administrator has "complete discretionary authority to control the operation, management and administration" of the Plan, including "the power the construe [the] Plan, to determine eligibility for benefits and to resolve all interpretative, equitable or other questions that arise under the Plan." These determinations are "final and binding." The Administrator is only limited in that his or her determinations must be made "in a uniform and nondiscriminatory manner and in full accordance with any and all laws applicable to the Plan."

Plaintiff argues that the Administrator did not have discretion, because he or she must act in a "uniform and discriminatory manner" in keeping with the law.  The Court disagrees.  The Administrator's power to hand down binding interpretations and constructions of the Plan and decisions about plan participants' benefits certainly qualifies as discretion.  *See Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 457 (6th Cir. 2003) (applying the "arbitrary and capricious" standard where the plan administrator had the power to make rules and regulations regarding the application of the plan, to interpret the plan, and to make determinations of member benefits under the plan).  Therefore, the "arbitrary and capricious" standard of review will be applied.

## II.    Appropriateness of Benefits

The parties agree that the determination of Plaintiff's benefits is properly made under the standards set out in the Human Resources Administration Policy.  Plaintiff's benefits are determined by his Scheduled Hours as determined at the time of his retirement.  As stated above, Scheduled Hours are defined as

> The regular fixed schedule that an employee is required to work.  The schedule is a condition of employment; it is mandatory.  Overtime (including casual and mandatory overtime) does not qualify.  The schedule must be ongoing (permanent) or sporadic (equal to or greater than 90 days continuous) and properly approved by the USEC Compensation manger or designated represtntative.

Plaintiff claims that his scheduled hours were elongated during the strike.  While Plaintiff does not contend that his extended hours were "ongoing," he claims that they were continued for more than ninety days and should qualify as a "sporadic" increase in his scheduled hours.

11

Furthermore, Plaintiff asserts that Labarraque's approval of his increased benefits is sufficient approval by a USEC Compensation manager to justify an increase in his scheduled hours.

In reviewing his benefits, the Defendants disagreed.  Defendants determined that the additional hours worked by Plaintiff were not regular enough to constitute scheduled hours. Indeed, the widely varying schedules and amounts of weekly hours worked by Plaintiff during the strike support this decision; if Plaintiff were indeed required to adhere to the weekly schedule of five twelve hour days, an accounting of his time shows that he rarely complied with that requirement.  Defendants also note that Plaintiff did not adhere to a sixty hour a week work schedule for ninety continuous days.  While Plaintiff did work several sixty hour work weeks, an accounting of his time shows that this was not observed continuously for the requisite amount of time.[2]  For these reasons, Defendants did not classify Plaintiff's extended hours as a change in scheduled hours, but as overtime hours required on a temporary basis.  As set forth in the benefits policy, this overtime does not alter Plaintiff's Scheduled Hours for benefits purposes.  The Court holds that, based on the information before the Committee at the time this determination was made, the denial of Plaintiff's request for increased pension benefits was "rational in light of the plan's provisions." *Williams*, 227 F.3d at 712.   Therefore, the decision was not "arbitrary and capricious," and an affirmation of the Defendants' decision is proper.[3]

---

[2]If the Court were adjudicating this matter under a summary judgment standard, an issue of fact would exist between the parties as to Plaintiff's hours during this time.  However, because summary judgment is not appropriate in an ERISA case, the Court looks only to the information available at the time of review - the accounting of Plaintiff's hours worked.

[3]The parties also argue about whether Plaintiff's filing of an appeal was timely.  The Court finds such a determination immaterial in this matter.  There is evidence that the appeal was accepted late and reviewed.  Regardless, the determination of timeliness does not alter the ultimate outcome of this case.

12

Lastly, Plaintiff argues that the Defendants acted arbitrarily because they did not apply the benefits standards in a uniform manner, as they were required to by the benefits plan.  Based on the evidence in the record, the Court does not find that the Defendants deviated from the standards.  While Plaintiff claims that all similarly situated retirees were granted pensionable credit for the hours worked during the strike, no evidence of additional compensation is evident in the record which was before the Administrator review Plaintiff's benefits.  Therefore it is outside the scope of the Court's review.  Based on the standards acknowledged by the Plaintiff to be applicable to his retirement benefits, the Defendants made a rational decision in denying him an increase in pensionable Schedule Hours.  If the admittedly proper standards were applied nonuniformly to other employees, it does not affect their proper application to Plaintiff.

## CONCLUSION

For the above reasons, the Court GRANTS Defendants' Motion for Judgment Affirming the Plan Administrator's Decision and DENIES Plaintiff's Motion for Summary Judgment.  An appropriate Order shall issue.